No. 26-3780

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

IN RE: OPTUMRX, INC.; UNITEDHEALTH GROUP, INC.; OPTUM, INC.; OPTUMINSIGHT, INC.; OPTUMINSIGHT LIFE SCIENCES, INC.; OPTUMRX DISCOUNT CARD SERVICES, LLC; OPTUM PERKS, LLC; OPTUMHEALTH CARE SOLUTIONS, LLC; OPTUMHEALTH HOLDINGS, LLC; OPTUM HEALTH NETWORKS, INC.; EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; MEDCO HEALTH SOLUTIONS, INC.; ESI MAIL ORDER PROCESSING, INC.; ESI MAIL PHARMACY SERVICE, INC.; EXPRESS SCRIPTS PHARMACY, INC.; EVERNORTH HEALTH, INC.; EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC.
*Petitioners*,

On Petition for Writ of Mandamus
United States for the Northern District of Ohio at Cleveland
(No. 1:17-md-2804-DAP)
(Hon. Dan Polster)

# BRIEF FOR THE BUCKEYE INSTITUTE AS AMICUS CURIAE SUPPORTING PETITIONERS

David C. Tryon
*Counsel of Record*
Alex M. Certo
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
D.Tryon@BuckeyeInstitute.org

*Attorneys for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 29(a)(4)(A) and 26.1 of the Federal Rules of Appellate Procedure, amicus states that it has no parent corporation and issues no stock; thus, no publicly held corporation owns more than ten percent of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......................................... i

TABLE OF AUTHORITIES .................................................................. ii

INTEREST OF AMICUS CURIAE ......................................................... 1

ARGUMENT ......................................................................................... 1

I. Introduction .......................................................................... 1

II. Although resolving a national crisis via a global MDL settlement may be a desirable outcome, that should not be the principal effort of pretrial administration ....................................... 3

III. MDLs, if not properly administered, tend to attract invalid claims, making adherence to the Federal Rules and early scrutiny particularly important ...................................................... 4

IV. Given the vast impact of pretrial rulings and the limited interlocutory relief in MDL cases, the district court must scrupulously adhere to the Federal Rules ..................................... 11

V. The need for mandamus action in MDL litigation ........................ 13

CONCLUSION ..................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015) .......................................................... 3, 9, 10

*In re Blue Cross Blue Shield Antitrust Litig.*,
No. 2:13-CV-20000-RDP, 2018 WL 3326850 (N.D. Ala. June 12, 2018) .......................................................... 14

*In re Fosamax Prods. Liab. Litig.*,
No. 06 MD 1789 JFK, 2012 WL 5877418 (S.D.N.Y. Nov. 20, 2012) ..... 6

*In re Korean Air Lines Co.*,
642 F.3d 685 (9th Cir. 2011) .......................................................... 13

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
No. 4:08-MD-2004 (CDL), 2016 WL 4705827 (M.D. Ga. Sept. 7, 2016) .......................................................... 6, 7

*In re Nat'l Prescription Opiate Litig.*,
956 F.3d 838 (6th Cir. 2020) .......................................... 8, 10, 11, 13

*Rodriguez v. Hirshberg Acceptance Corp.*,
62 F.4th 270 (6th Cir. 2023) .......................................................... 1

### Statutes

28 U.S.C. § 1407 .......................................................... 2, 12

### Other Authorities

Abbe R. Gluck & Elizabeth Chamblee Burch, *MDL Revolution*,
96 N.Y.U. L. Rev. 1 (2021) .......................................................... 2, 3

Advisory Comm. on Rules of Civ. Proc., *MDL Subcommittee Report* (2018) .......................................................... 5

Andrew S. Pollis, *The Need for Non-Discretionary Interlocutory Appellate Review in Multidistrict Litigation*, 79 Fordham L. Rev. 1643 (2011) .......................................................... 14

Arthur R. Miller, *What Are Courts for? Have We Forsaken the Procedural Gold Standard?*, 78 La. L. Rev. 739 (2018) ........................ 3

Christopher B. Mueller, *Taking a Second Look at MDL Product Liability Settlements: Somebody Needs to Do It*, 65 U. Kan. L. Rev. 531 (2017) ........................................................................ 14

D. Theodore Rave, *Multidistrict Litigation and the Field of Dreams*, 101 Tex. L. Rev. 1595 (2023) ........................................................ 5

Fed. Jud. Ctr., *Manual for Complex Litigation* (4th ed. 2004) ................ 3

Howard M. Erichson, *MDL and the Allure of Sidestepping Litigation*, 53 Ga. L. Rev. 1287 (2019) ........................................................ 4

Order, *In re Harris County, TX*, No. 21-3637 (6th Cir. Mar. 11, 2022) ................................................................................ 10

Richard B. North, Jr., *MDL Remands: A Defense Perspective*, 89 U.M.K.C. L. Rev. 997 (2021) ........................................................ 5

Tr. of Proceedings at 4, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-02804 (N.D. Ohio Jan. 9, 2018) ............................................. 4

**Rules**

Fed. R. Civ. P. 16.1, Advisory Comm. Note to R. 16.1(b)(3)(A) ............. 12

## INTEREST OF AMICUS CURIAE[1]

The Buckeye Institute was founded in 1989 as an independent research and educational institution—a think tank—to formulate and promote free-market policy in the states. The Buckeye Institute accomplishes its mission by performing timely and reliable research on key issues, compiling and synthesizing data, formulating free-market policies, and marketing those policy solutions for implementation in Ohio and replication across the country. The Buckeye Institute also files lawsuits and submits amicus briefs to fulfill its mission. The Buckeye Institute is a nonpartisan, nonprofit, tax-exempt organization, as defined by I.R.C. section 501(c)(3).

## ARGUMENT

### I. Introduction

The Federal Rules of Civil Procedure (Federal Rules) provide a protocol that best provides justice equally for all parties. *See Rodriguez v. Hirshberg Acceptance Corp.*, 62 F.4th 270, 273 (6th Cir. 2023) (noting that the Federal Rules "seek to promote procedural uniformity across the

[1] As required by Rule 29(a), no counsel for any party has authored this brief in whole or in part and no person other than the amicus has made any monetary contribution to this brief's preparation or submission.

federal courts"). Congress authorized Multidistrict Litigation (MDL) for the purpose of "coordinat[ing] or consolidate[ing] pretrial proceedings". 28 U.S.C. § 1407. But it did not authorize courts to ignore or relax the Federal Rules, which govern individual cases even after referral to an MDL court.

Nevertheless, the MDL bar and judges have seemingly implemented different procedural rules beyond those authorized by the Federal Rules. Professors Gluck and Burch identify this phenomenon as "procedural exceptionalism." Abbe R. Gluck & Elizabeth Chamblee Burch, *MDL Revolution*, 96 N.Y.U. L. Rev. 1, 1 (2021). They explain that MDL judges have increasingly treated MDLs as sufficiently unique to justify departures from ordinary procedural rules. *Id.* at 19–20. They describe the result as a form of "federal common law of MDL procedure." *Id.* at 19. This court has—and should continue to—rein in that movement.

This case exemplifies many of the problems with MDLs and the need for interlocutory relief through mandamus.

## II. Although resolving a national crisis via a global MDL settlement may be a desirable outcome, that should not be the principal effort of pretrial administration.

Although MDL is formally designed to provide an efficient pretrial process before cases return to their home courts, "[f]ew cases ever return." Gluck & Burch, *supra*, at 7. Professors Gluck and Burch describe the resulting "no remand" culture as one of the ways modern MDL has departed from ordinary procedural norms. *Id.* at 59. "But the implicit--and clear--culture of MDL transferee judges and lead counsel on both sides appears to have become the facilitation of settlement-- . . . preferably a global one embracing state cases" Arthur R. Miller, *What Are Courts for? Have We Forsaken the Procedural Gold Standard?*, 78 La. L. Rev. 739, 789 (2018).

This does not mean that settlement of the individual cases is improper. Indeed, "most multidistrict litigation is settled in the transferee court." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 415 n.6 (2015) (citing Fed. Jud. Ctr., *Manual for Complex Litigation* § 20.132 (4th ed. 2004)). Settlement is an ordinary and desirable means of resolving litigation. The point is narrower and more fundamental: The possibility that centralized proceedings will facilitate settlement cannot be the

primary objective of the transferee court. Efficiency and settlement are purposes that must operate within § 1407 and the Federal Rules; they cannot replace them.

That distinction is important in this MDL. The transferee court's stated objective at the outset was not simply to coordinate pretrial proceedings, but "to do something meaningful to abate this crisis." Howard M. Erichson, *MDL and the Allure of Sidestepping Litigation*, 53 Ga. L. Rev. 1287, 1290 (2019) (quoting Tr. of Proceedings at 4, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-02804 (N.D. Ohio Jan. 9, 2018)). That aspiration may be understandable, but the judicial role is adjudicative, not legislative or executive. The court cannot acquire authority to solve a national policy problem merely because the litigation before it provides an opportunity to do so.

## III. MDLs, if not properly administered, tend to attract invalid claims, making adherence to the Federal Rules and *early* scrutiny particularly important.

MDL expansion can create a litigation "field of dreams"—build it, and plaintiffs will come. Aggregation changes the economics of litigation. MDL proceedings "significantly lower barriers to entry for mass tort claims" because consolidation creates economies of scale and reduces the

marginal cost of adding another claim. D. Theodore Rave, *Multidistrict Litigation and the Field of Dreams*, 101 Tex. L. Rev. 1595, 1600–01 (2023). As a result, MDLs may draw additional claims into the system, and those claims may have lower expected values than claims that would have been filed without aggregation. *Id.* at 1601.

The MDL subcommittee of the Advisory Committee for the Rules of Civil Procedure has found "fairly widespread agreement" among experienced practitioners and judges that marginal claims are a genuine problem, with estimates that 20–30% of claims in some centralized proceedings, and perhaps 40–50% of cases, may be "unsupportable." Richard B. North, Jr., *MDL Remands: A Defense Perspective*, 89 U.M.K.C. L. Rev. 997, 999 (2021) (quoting Advisory Comm. on Rules of Civ. Proc., *MDL Subcommittee Report* 142–43 (2018)). One well-respected MDL practitioner, Richard North, shared his experiences. North described claims in one of his MDL cases in which some plaintiffs who never used the product, suffered no injury, or whose claims were barred by the statute of limitations, still asserted claims. *Id.* at 999–1000.

Some MDL courts have noted similar experiences:

> [T]he Court has reason to believe that spurious or meritless cases are lurking in the some 1,000 cases on the MDL docket. As Merck points out, more than 50% of the cases set for trial have been dismissed, and some 31% of cases that have been selected for discovery have been dismissed.

*In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 JFK, 2012 WL 5877418, at *3 (S.D.N.Y. Nov. 20, 2012).

Another judge explained that "[a]lthough one of the purposes of MDL consolidation is to allow for more efficient pretrial management of cases," the MDL process has evolved toward "an alternative dispute resolution forum for global settlements," which incentivizes "the filing of cases that otherwise would not be filed if they had to stand on their own merit as a stand-alone action." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2016 WL 4705827, at *1 (M.D. Ga. Sept. 7, 2016).

The court further observed that "[s]ome lawyers seem to think that their case will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeded as a separate individual action." *Id.* Consequently, MDL cases become

"populated with many non-meritorious cases that must nevertheless be managed by the transferee judge—cases that likely never would have entered the federal court system without the MDL." *Id.* The judge then admonished fellow MDL judges: "At a minimum, transferee judges should be aware that they may need to consider approaches that weed out non-meritorious cases early, efficiently, and justly." *Id.* at *2.

The lesson is not that every MDL contains "junk" claims or that aggregation is inherently improper. It is that aggregation can reduce the individualized scrutiny that ordinarily tests the factual and legal sufficiency of a claim. That makes adherence to the Federal Rules' pleading, discovery, amendment, summary-judgment, and other procedural rules particularly important. The Federal Rules provide the mechanisms by which individual claims are tested—such as Rule 12(b) motions to dismiss. An MDL court should not—may not—weaken those mechanisms to increase the efficiency of the aggregate proceeding.

The concern of non-meritorious claims is very real in this case. As of May 2025, 82 plaintiffs were asserting claims against the PBMs. PBMs' Amended Joint Opposition to Plaintiffs' Omnibus Motions for Leave to Amend at 7–11, R. 6163. But hundreds more non-bellwether plaintiffs

sought to add claims against the PBMs. In a series of issue rulings and an order regarding the plaintiffs' motions for leave to amend, the court allowed hundreds—in total, about 800—more plaintiffs to assert claims against the PBMs. *See generally* Pet. at 8–14.

This Court has already admonished the lower court that "an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, *as applied to the record in that case alone*." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020) (emphasis added). Nevertheless, the court did not treat them as separate motions, but instead jumbled them together with this justification:

> Although the Court could conceivably identify each of the cases that would contain a futile claim and prohibit now any amendment to state those claims, the result would not yield denial of any plaintiff's motion to amend in its entirety. The Court's effort would largely be a waste of judicial resources. Instead, the Court trusts that plaintiffs will, if granted leave to amend, not state any plainly futile claim in their amended complaints.

Issue Ruling Three Regarding Futility of Claims at 9, R. 6418. So, rather than treat the cases individually as required by the Federal Rules and this Court's prior ruling, the lower court "trusted" the plaintiffs to do the

court's work for it—namely, to ferret out the futile claims, which the PBM defendants had already identified. *See* Pet. at 12–13.[2]

The court then explained that "[a]ny such [futile] claim that does appear can be addressed through a later-filed motion to dismiss." Issue Ruling Three Regarding Futility of Claims at 9, R. 64189. But the court reminded the defendants that the court's prior moratorium (in place since 2017, *see, e.g.,* Order Regarding Remands, Dkt. No. 130) prohibited them from filing any such motions to dismiss.[3] Issue Ruling Three Regarding Futility of Claims at 9 n.3, R. 64189. And, of course, any motion to dismiss likely would have to address the specific "futile" claim in each case, not be a global motion to dismiss all 800 globally granted claims. *See id.* at 2 (citation omitted); *see also* Pet. at 12–13.

[2] While Federal Rule 1.1 allows for consolidated pleadings in some situations, the cases in this MDL were filed as separate cases and, as such, "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015).

[3] The court noted that "any such motion to dismiss will only be allowed if the defendant obtains leave, which is likely only if the case is selected as an MDL bellwether or is remanded". Issue Ruling Three Regarding Futility of Claims at 9 n.3, R. 64189. Which means that defendants may have to labor through years of discovery, pretrial proceedings, and other motion practice before ever being allowed to test the adequacy of the various asserted claims.

This Court has already directed that "Civil Rule 12(b) states that 'a party *may* assert' the defenses enumerated therein 'by motion,' which means that the district court may *not* refuse to adjudicate motions properly filed under that Rule." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 846. *See also* Order at 3, *In re Harris County, TX*, No. 21-3637 (6th Cir. Mar. 11, 2022) (noting that an MDL district court's delay based on "the economic impact of the litigation; the efficiencies created by imposing a stay while a global settlement was sought; concern that lifting the stay would jeopardize settlement efforts . . . are grounded in policy with no basis in statute or the Federal Rules of Civil Procedure");

The court further rationalized its questionable global ruling: "True, the PBM's will be named in more cases, but that is a consequence of the allegations against them, not of any structural change to the MDL itself." Issue Ruling Six Regarding Prejudice at 9, R. 6599. The Supreme Court has rejected this approach. Again, the court is looking only at the monolithic MDL—stripping the cases of their individuality. "Section 1407 refers to individual 'actions' transferrable to a single district court, not to a monolithic multidistrict 'action' created by transfer." G*elboim*, 574 U.S. at 406.

But assuming there is something hidden in the Federal Rules that permits amendments to individual cases so long as collectively they do not "structurally" change the MDL of which they are a part, going from 80 to 800 plaintiffs suing the PBMs seems to be a structural change to the litigation against those specific defendants. The court's ruling is both unfair and inconsistent with the Federal Rules.

## IV. Given the vast impact of pretrial rulings and the limited interlocutory relief in MDL cases, the district court must scrupulously adhere to the Federal Rules.

The absence of interlocutory review makes adherence to the Federal Rules even more important in MDL cases. "The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 842. And this Court has rejected the proposition that an MDL court may sacrifice the rights of an individual case to achieve efficiencies for the MDL as a whole. *Id.* at 843–44. Indeed, "an MDL court must find efficiencies within the Civil Rules, rather than in violation of them." *Id.* at 844.

That principle should guide every exercise of MDL authority. Congress authorized consolidation for "coordinated or consolidated

pretrial proceedings." 28 U.S.C. § 1407(a). It did not authorize a transferee judge to create a different procedural system whenever the Federal Rules become inconvenient. The Federal Rules themselves now confirm this point. Federal Rule 16.1, effective December 1, 2025, provides a framework for MDL management while preserving the Federal Rules' application to MDL proceedings. The Advisory Committee notes expressly state that the Federal Rules, "including the pleading rules, continue to apply in all MDL proceedings." Fed. R. Civ. P. 16.1, Advisory Comm. Note to R. 16.1(b)(3)(A).

And where interlocutory appellate review is limited, the answer cannot be to give the MDL court greater freedom to depart from the Federal Rules. The answer must be the opposite: The more concentrated the judicial power and the more limited the opportunity for appellate correction, the more faithfully the transferee court must adhere to the procedural rules that the Supreme Court established. And a court reviewing an MDL decision must ensure that a single ruling does not *en masse* violate the procedural rights of the parties.

**V. The need for mandamus action in MDL litigation.**

This Court has recognized that mandamus is appropriate when the defendants have "no other adequate means" to obtain relief, that the subject ruling would prejudice the movant "in a way not correctable on appeal," and that the ruling manifested "a persistent disregard of the federal rules." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 844–45.

The lower court's present decision to allow another round of amendments illustrates the value of the mandamus remedy in the MDL context. The MDL judge's authority is broadest with respect to the "phasing, timing, and coordination" of proceedings, but when the court addresses motions that may determine "the life or death of a case," it must apply the traditional standards governing those motions. *Id*. at 844 (quoting *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011)).

The distinction between "phasing, timing, and coordination," and key motions—such as motions to amend to add claims by hundreds of plaintiffs against certain defendants—is critical. An MDL judge may possess substantial authority to coordinate discovery and other genuinely common pretrial matters. But the larger the MDL becomes, the greater the consequences of an erroneous ruling. Moreover, a "pretrial ruling in

[an] MDL litigation has a 'dramatically larger impact' than a similar ruling would have in non-aggregated litigation." *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2018 WL 3326850, at *4 (N.D. Ala. June 12, 2018) (citing Andrew S. Pollis, *The Need for Non-Discretionary Interlocutory Appellate Review in Multidistrict Litigation*, 79 Fordham L. Rev. 1643 (2011)). Yet the ordinary appellate process generally does not provide immediate review of such orders. Mandamus, therefore, serves as an essential safeguard against the possibility that a transferee court's procedural discretion will become an independent source of authority.

The need for that safeguard is heightened by the settlement-driven nature of modern MDL practice. MDL judges possess substantial leverage to push cases toward settlement and aggregate MDL settlements, which are "virtually unchallengeable and unreviewable." Christopher B. Mueller, *Taking a Second Look at MDL Product Liability Settlements: Somebody Needs to Do It*, 65 U. Kan. L. Rev. 531, 535 (2017). If important rulings are made during an MDL proceeding and the proceeding then ends in a global settlement, the rulings likely never receive meaningful appellate scrutiny.

The combination of centralized authority, limited interlocutory review, and settlement pressure creates a structural problem: The mechanism that concentrates judicial power often produces unreviewable outcomes. That is why mandamus is an appropriate remedy when an MDL court departs from the Federal Rules.

## CONCLUSION

For the above reasons, this Court should grant the petition and issue the writ of mandamus.

Respectfully submitted,

*/s/ David C. Tryon*

David C. Tryon
*Counsel of Record*
Alex M. Certo
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
D.Tryon@BuckeyeInstitute.org

September 2, 2026

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. Rule 29(a)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,880 words.

This document complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type-style requirements of Fed. R. App. R. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for the most current version of Office 365 in 14-point type, Century Schoolbook.

/s/ David C. Tryon
David C. Tryon
*Attorney of record for*
*The Buckeye Institute*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing amicus brief was served on all counsel of record via the Court's electronic filing system this 2nd day of September 2026.

/s/ David C. Tryon
David C. Tryon
*Attorney of record for*
*The Buckeye Institute*