No. 26-3780

# In the United States Court of Appeals for the Sixth Circuit

IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION

IN RE: OPTUMRX INC., ET AL.

*Petitioners*

On appeal from the United States District Court for the Northern District of Ohio, No. 17-md-2804 (Polster, J.)

**RESPONSE OF PLAINTIFFS' EXECUTIVE COMMITTEE TO PETITION FOR WRIT OF MANDAMUS**


Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor New York, NY 10016
(212) 784-6400 (212) 213-5949 (fax)
jconroy@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER
270 Munoz Rivera Avenue, Suite 201
San Juan, PR 00918
(304) 654-8281
paul@farrellfuller.com
*Plaintiffs' Co-Lead Counsel*

MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com
*Plaintiffs' Liaison Counsel*

**TABLE OF CONTENTS**


**Page**

INTRODUCTION .......... 1

ISSUES PRESENTED .......... 6

STATEMENT OF THE CASE .......... 7

A. Following the Trial and Resolution of Claims Against Other Defendants, Significant Information Regarding the PBMs' Conduct Became Available to MDL Plaintiffs in 2023. .......... 8

B. The District Court's MLA Process Enabled It and the Parties to Identify Common and Plaintiff-Specific Issues Bearing on the Proposed Amendments. .......... 12

C. The District Court's Six Issue Rulings, Totaling 80 Pages, Address Both Commonly Applicable and Plaintiff-Specific Issues. .......... 15

LEGAL STANDARD .......... 16

REASONS TO DENY THE PETITION .......... 17

I. The PBMs' Assertions of Error Lack Merit and Mandamus Is Not the Appropriate Vehicle to Address Any Such Error. .......... 17

A. The District Court's Issuance of Rulings Addressing the PBMs' Substantially Similar Arguments Common to All Plaintiffs Was Proper. .......... 17

B. The District Court Properly Determined It Could Assess the Substance of the Amendments Without Requiring 800 Proposed Complaints. .......... 20

C. The District Court Did Not Clearly Err in Determining Plaintiffs Demonstrated Diligence Under Rule 16. .......... 22

D. Even If the District Court Committed Error, It Does Not Amount to a "Judicial Usurpation of Power." .......... 30

II. Because the PBMs Could Obtain Adequate Relief Through Normal Procedures, Mandamus Is Inappropriate. .......... 32

**TABLE OF CONTENTS**
**(continued)**

**Page**

A. The PBMs Elected Not to Pursue Additional Motion Practice Before the District Court. ....................................... 33

B. The PBMs Will Have the Right to Seek Future Relief Through Additional Pleading Motions and Post-Judgment Appeals................................................................ 34

III. There Are No Other Compelling Reasons to Grant Mandamus. ........................................................................... 36

CONCLUSION ......................................................................... 40

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bank of Am., N.A. v. Corporex Realty & Inv. Corp.*, 661 F. App'x 305 (6th Cir. 2016)....26

*In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300 (6th Cir. 1984)....31

*Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017)....20

*Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009)....23

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004)....16

*City of Boston v. OptumRx, Inc.*, 169 F.4th 58 (1st Cir. 2026)....27

*Doe v. Carson*, 2020 WL 2611189 (6th Cir. May 6, 2020)....21

*In re Express Scripts, Inc.*, No. 25-3006, Doc. 24-1 (6th Cir. June 3, 2025)....31

*In re Futaba Corp. of Am.*, 2024 WL 3490789 (Fed. Cir. July 22, 2024)....34

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020)....26

*Harris v. Davidson Cnty. Sheriff*, 2019 WL 7573883 (6th Cir. Dec. 11, 2019)....21

*Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260 (6th Cir. 2021)....22

*Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377 (6th Cir. 2017)....21

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008)....31, 38

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Korean Air Lines Co.*,
642 F.3d 685 (9th Cir. 2011) .......... 30

*Leary v. Daeschner*,
349 F.3d 888 (6th Cir. 2003) .......... 26

*In re Life Inv'rs Ins. Co. of Am.*,
589 F.3d 319 (6th Cir. 2009) .......... *passim*

*Miller v. William Beaumont Hosp.*,
121 F.4th 556 (6th Cir. 2024) .......... 33

*In re Nat'l Prescription Opiate Litig. (Meijer)*,
2022 WL 20701236 (6th Cir. Nov. 10, 2022) .......... 38

*In re Nat'l Prescription Opiate Litig. (CVS)*,
956 F.3d 838 (6th Cir. 2020) .......... *passim*

*NOCO Co. v. Lapidus*,
2022 WL 1803039 (N.D. Ohio June 2, 2022) .......... 23

*O'Neal v. Denn-Ohio, LLC*,
2020 WL 210801 (N.D. Ohio Jan. 14, 2020) .......... 23

*In re OptumRx, Inc.*,
No. 24-3396, Doc. 7-1 (6th Cir. Oct. 22, 2024) .......... 33

*In re Plumbing Fixture Cases*,
298 F. Supp. 484 (J.P.M.L. 1968) .......... 39

*Profitt v. Highlands Hosp. Corp.*,
2024 WL 3622448 (6th Cir. Aug. 1, 2024) .......... 25

*Rapp v. Forest City Techs., Inc.*,
2021 WL 4713394 (N.D. Ohio June 17, 2021) .......... 23

*Reed v. Hope Depot U.S.A., Inc.*,
2017 WL 5202684 (S.D. Ohio May 15, 2017) .......... 24

*Shillman v. United States*,
221 F.3d 1336 (Table), 2000 WL 923761
(6th Cir. June 29, 2000) .......... 20

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Tesone v. Empire Mktg. Strategies*,
942 F.3d 979 (10th Cir. 2019)........................................................27

**Court Rules**

Fed. R. Civ. P. 1..............................................................................2

**Other Authorities**

*Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug Costs and Squeezing Main Street Pharmacies*, FTC Interim Staff Report (July 2024)...........................25

## INTRODUCTION

Dissatisfied with the District Court's rulings on plaintiffs' motions for leave to amend (MLAs), the Optum and Express Scripts defendants (PBMs) pursue yet another in a series of meritless mandamus petitions seeking to undermine Judge Polster's statutorily prescribed authority to manage the sprawling multidistrict opioids litigation. Their present petition attempts to cast his carefully reasoned rulings on the MLAs as judicial malpractice. They are incorrect, but in any event "a writ of mandamus is an extraordinary remedy that [the Court] will not issue absent a compelling justification." *In re Life Inv'rs Ins. Co. of Am.*, 589 F.3d 319, 323 (6th Cir. 2009). The PBMs fail to satisfy any of the prerequisites to invoking the exceptional relief they seek.

First, and foremost, the PBMs cannot demonstrate the District Court's rulings are "clearly erroneous as a matter of law." *Id.* The record shows that in ruling on the MLAs, the District Court applied Rules 15 and 16 and determined that *each* plaintiff to whom it granted leave to amend satisfied the requirements under those rules. The PBMs make much of the fact that, in the end, the District Court permitted approximately 800 plaintiffs to add these defendants, but

they ignore that, partly as a result of the process the court undertook to evaluate the MLAs, approximately *1,000* other plaintiffs seeking the same relief withdrew from the motions.

The District Court distinguished the plaintiffs who satisfied the requirements under the Federal Rules from those who did not through a fair and efficient process that allowed the parties and the court to identify and group similarly situated plaintiffs while enabling the parties to identify individualized circumstances affecting particular plaintiffs. The PBMs took full advantage of this process, filing more than *6,500 pages* in opposition to the motions. But that briefing, which purported to individually address each of the 1,800 plaintiffs who initially sought leave to add these defendants, demonstrated only the extent to which the PBMs' arguments overlapped among plaintiffs. Their contention that plaintiffs were required to submit identical arguments hundreds of times in separate motions, and that the court was required to issue 1,800 separate rulings, is both nonsensical and inconsistent with the Federal Rules, which *encourage*, rather than punish, efficiency. *See* Fed. R. Civ. P. 1.

The PBMs rely heavily on *In re National Prescription Opiate Litigation (CVS)*, 956 F.3d 838 (6th Cir. 2020), but they disregard the distinct circumstances animating the Court's grant of mandamus there. In that instance, the District Court permitted certain plaintiff municipalities to assert new claims against pharmacy defendants—which those plaintiffs had previously disavowed—well after the amendment and *discovery* deadlines. In so ruling, the court cited the MDL efficiencies that would result rather than analyzing plaintiffs' diligence and whether the pharmacies would suffer substantial prejudice, which Rule 16 requires. This Court held that reasoning was erroneous.

This time, the District Court unquestionably determined that each plaintiff demonstrated its diligence in pursuing claims against the PBMs, and that adding these claims poses no meaningful prejudice to the PBMs given the court-imposed moratorium on discovery and all other litigation in these non-bellwether cases. *See Issue Ruling Five*, R. 6553 (diligence); *Issue Ruling Six*, R. 6599 (prejudice). The fact that many of the plaintiffs were similarly situated with respect to particular circumstances and that many of the PBMs' arguments applied

identically to most or all plaintiffs does not detract from the plaintiff-specific nature of the court's rulings.

The PBMs also object to the District Court's determination that plaintiffs need not submit hundreds of nearly identical proposed complaints with their motions. But this Court's precedents make clear it is the *substance* of the proposed amendment that matters, not necessarily whether it appears through a motion or a formal proposed complaint. The District Court faithfully applied that standard.

The only *substantive* ruling the PBMs challenge is the court's finding of diligence under Rule 16. Particularly in light of Judge Polster's vast knowledge of the opioids proceedings over nearly nine years, his determination that plaintiffs were diligent in asserting claims against the PBMs after the applicable deadlines was well informed and reasonable. This is especially so in light of the PBMs' assertions that claims against them were frivolous, and given the PBMs' opaque corporate structure and complex business model. That this Court or another one might have come to a different conclusion does not mean the District Court abused its discretion, let alone suggest its rulings

"contain[] an oft-repeated error, or manifest[] a persistent disregard of the federal rules." *Life Inv'rs*, 589 F.3d at 323.

Beyond the PBMs' unavailing challenges to the District Court's analysis and conclusions, their petition suffers from an even more fundamental defect: the PBMs fail to demonstrate that they "ha[ve] no other adequate means, such as direct appeal, to attain the relief desired" or that absent the writ, they "will be damaged or prejudiced in a way not correctable on appeal after a final judgment." *Id.* In particular, the PBMs *chose* not to pursue further relief from the District Court. For example, in connection with its six "Issue Rulings" addressing the parties' thousands of pages of arguments, the court directed them to confer and report whether any of those rulings "require[d] a definitive ruling from the Court because the parties cannot agree" that a particular MLA should be granted or denied. *E.g.*, *Issue Ruling Six*, R. 6599, Page ID # 712274. To the extent the PBMs believed the District Court failed to "requir[e] any individualized showing of good cause" for a particular case or to "examin[e] the record in [an] individual case" (Pet. 2), they could have informed the court.

The PBMs identified no such cases. Having forgone the opportunity provided below, the PBMs cannot now obtain a do-over from this Court.

In any event, the PBMs still have the opportunity to move to dismiss plaintiffs' claims and can challenge the MLA rulings after final judgment. In the meantime, each of the cases to which the PBMs will be added remains stayed; the PBMs will thus suffer no prejudice by waiting for post-judgment review of the District Court's rulings. As there is no compelling reason to circumvent the normal procedure, especially given that the District Court did not commit a manifest—or, indeed, any—legal error, this Court should deny the petition.[1]

## ISSUES PRESENTED

1. Is mandamus warranted given that the PBMs (a) had the opportunity to, but did not, pursue additional motion practice before the District Court; and (b) will be able to move to dismiss the new claims and challenge them on appeal following a judgment?

[1] Unless otherwise indicated, emphasis in this brief is added and internal citations and quotation marks are omitted. Additionally, "R. __" refers to entries on the MDL docket (No. 17-md-2804-DAP (N.D. Ohio)) and page references reflect ECF pagination.

2. Did the District Court commit clear error by (a) declining to endorse the PBMs' demand for hundreds of individual motions, each of which would raise identical or substantially similar bases for amendment; (b) determining plaintiffs provided the substance of the amendments without submitting proposed complaints, consistent with Sixth Circuit precedent; (c) adopting a process to organize its application of Rule 16's good cause standard to the facts of each case and to address identical arguments advanced against similarly situated plaintiffs; and (d) concluding none of the remaining movants lacked diligence in failing to sue the PBMs prior to the applicable amendment deadline?

3. Are there any other compelling reasons to grant mandamus, given that the District Court acted within its discretion, its actions do not "manifest[] a persistent disregard of the Federal Rules," and the Issue Rulings do not raise "new and important problems" or "legal issues of first impression" (*Life Inv'rs*, 589 F.3d at 323)?

## STATEMENT OF THE CASE

Most of the circumstances leading to the challenged rulings are detailed in Judge Polster's September 11, 2026 letter response to the

mandamus petition. *See* Dist. Ct. Resp. 1-15. Plaintiffs provide additional background facts to assist the Court.

### A. Following the Trial and Resolution of Claims Against Other Defendants, Significant Information Regarding the PBMs' Conduct Became Available to MDL Plaintiffs in 2023.

The District Court determined the best way to manage the multiplicity and variety of claims in the MDL was to sequence them by defendant category. To that end, the court first addressed claims against manufacturers and distributors of prescription opioids, then claims against dispensers of opioids, and finally claims against pharmacy benefit managers and relatively small defendants. Having been sued in a handful of cases that were part of the MDL from the outset, the PBMs were present as defendants at the time the District Court entered its sequencing orders and were aware that claims against them would not be addressed until after claims against the other categories of defendants were litigated. To facilitate this sequencing, beginning in April 2018 the District Court issued a moratorium that precluded all motion practice, discovery, and other substantive activity in all cases other than those selected as bellwethers.

As a discrete exception to the stay, at plaintiffs' request the District Court permitted them to amend their existing complaints following the release of additional data from the Drug Enforcement Administration's Automation of Reports and Consolidated Orders System (ARCOS) regarding the presence of opioids in various U.S. localities. That data was relevant to potential claims against pharmacies but was not of particular importance to claims against the PBMs. Through various case management orders, the District Court set a deadline for amendments: the later of March 16, 2019 or 90 days after the date a case was transferred into the MDL (collectively, the "amendment deadline"). Because the last case was transferred in April 2022, the last amendment deadline fell in July 2022. In the years following the March 2019 deadline, the District Court denied a handful of requests to lift the moratorium to allow particular plaintiffs to seek leave to amend. *See* Dist. Ct. Resp. 4-5.

As the parties and the District Court turned their focus to the PBMs and other remaining defendants, significant information regarding the PBMs emerged, primarily through document and deposition discovery in a non-MDL state court action: *Jefferson County,*

*MO v. Dannie E. Williams, M.D., et al.*, Case No. 20-JE-CC00029 (Mo. Cir. Ct.) (JeffCo Action or *JeffCo*). As detailed in the declaration of R. Johan Conrod, Jr. that accompanies plaintiffs' MLAs, OptumRx began producing documents in *JeffCo* in 2021 but produced most of them after 2022. Conrod Decl., R. 5547-2, Page ID # 640580 (¶¶ 7-8). Those documents "were subject to a Protective Order entered in that case and were not shared with counsel who did not appear in the JeffCo Action." *Id.* at Page ID # 640581 (¶ 10).

In a May 2021 letter to Jefferson County's counsel, OptumRx's counsel asserted "it is clear that the County had no evidentiary basis for suing OptumRx, much less for alleging that OptumRx helped 'flood the market' in Jefferson County with prescription opioids.'" *Id.* ¶ 11 & Ex. 1. The letter added: "By filing a petition with no discernible evidentiary basis, both you and the County have likely committed sanctionable conduct; OptumRx reserves its right to seek sanctions against both you and the County." *Id.*

Documents produced and depositions taken in *JeffCo* provided new information that supported claims against the PBMs. Among other things, discovery revealed that "OptumRx's rebate agreements with

opioid manufacturers were specifically structured such that the manufacturers would only be required to pay rebates if opioids were not restricted by utilization management tools ('UM') or prior authorization restrictions ('PA') and only so long as opioids were not 'disadvantaged' as compared to other drugs." *Id.* at Page ID # 640583 (¶ 21(a)). Further, "[a]s late as March 2019, OptumRx considered removing OxyContin from its formularies, but hesitated because of the volume of rebates it was receiving." *Id.* at Page ID # 640584 (¶ 21(d)).

Beginning in January 2023, discovery from *JeffCo* became available to plaintiffs in the MDL. *Issue Ruling Five*, R. 6553, Page ID # 711238. That information informed the allegations in the PBM bellwether actions in the MDL, including the case brought by bellwether plaintiff City of Rochester (*City of Rochester v. Purdue Pharma, L.P., et al.*, No. 19-op-45853 (N.D. Ohio)), which incorporated information elicited in *JeffCo* into its supplemental complaint filed in December 2023 (Rochester Complaint). Conrod Decl., R. 5547-2, Page ID ## 640583–640585 (¶¶ 20-22).

In light of this significant additional information, in April 2024 the Plaintiffs' Executive Committee (PEC) moved to lift the moratorium

and allow plaintiffs in the MDL to seek leave to amend their existing complaints to add claims against the PBMs and others. Motion, R. 5411. The alternative to this efficient approach would be for individual plaintiffs to file their own cases in courts throughout the country, which they could do given that most or all of their public nuisance claims are not subject to a statute of limitations (in addition to any tolling or other principles that might apply). The District Court granted the PEC's motion in May 2024. Order (May 23, 2024), R. 5455.

### B. The District Court's MLA Process Enabled It and the Parties to Identify Common and Plaintiff-Specific Issues Bearing on the Proposed Amendments.

Recognizing the inherent difficulties in addressing so many individual motions, the District Court adopted a procedure that would enable it to address each plaintiff individually while allowing for efficiencies that would arise where groups of plaintiffs were similarly situated with respect to circumstances relevant to the motions. Among other things, the court directed that all plaintiffs seeking to add a particular defendant must file a single joint motion with respect to that defendant. This requirement did not, however, relieve each plaintiff of

the obligation to demonstrate good cause under Rule 16 for leave to amend after the previously established deadline and to satisfy Rule 15.

In their MLA submissions—which consisted of detailed briefs, declarations, and exhibits—plaintiffs explained that (a) they were unable, through the exercise of reasonable diligence, to meet the prior amendment deadline; and (b) bringing these claims after the deadline would pose no meaningful prejudice to the PBMs, primarily because the continued moratorium in all of these cases meant the newly added defendants would not be subject to any burdens beyond those they already would face had plaintiffs sued them by the deadline. *E.g.*, MLA re Optum Defs., R. 5547, Page ID ## 640478–640487. Plaintiffs also demonstrated that none of the Rule 15 considerations—undue delay, prejudice, or bad faith—warranted disallowing the amendments. *Id.* at Page ID ## 640487–640488. Further, plaintiffs specified that the allegations and claims they sought to add to their operative complaints "would be substantially identical to those set forth in the [Rochester Complaint]." *Id.* at Page ID # 640472.

The PBMs chose to address plaintiffs one-by-one. The District Court facilitated this approach by permitting the PBMs to file an

unlimited amount of briefing (with no page limits) and exhibits in response to the motions. The PBMs filed more than 6,500 pages in opposition to the twin motions initially brought by approximately 1,800 plaintiffs as to the OptumRx and Express Scripts entities, which became approximately 3,300 pages following the withdrawal of about 1,000 movants.

As the District Court notes, the PBMs' purportedly individualized briefing was largely a façade. Although the PBMs divided "Part II" of their opposition into separate sections for each plaintiff, those passages consisted largely of boilerplate assertions repeated hundreds of times. It fell to plaintiffs, on reply, to explain why many of the PBMs' arguments raised issues that did not differ materially from one plaintiff to another and to identify and respond to the relatively few arguments that *did* raise individualized questions. *See, e.g.*, Reply in Resp. to PBMs' Joint MLA Opp. (MLA Reply), R. 6257, Page ID ## 694787–694824. As to those plaintiffs who did not subsequently withdraw their motions, the District Court resolved these individualized issues in its first three Issue Rulings, and the parties agreed as to which plaintiffs'

motions were encompassed by those rulings. *See* PEC's Stmt. on Issue Rulings One and Two, R. 6422, Page ID ## 707385–707386.

### C. The District Court's Six Issue Rulings, Totaling 80 Pages, Address Both Commonly Applicable and Plaintiff-Specific Issues.

The District Court addressed the parties' arguments through a series of interrelated Issue Rulings, each one resolving one or more legal issues potentially applicable to multiple plaintiffs. Among other things, the District Court determined that prior to January 2023, the information available to plaintiffs was not sufficient to require that they sue the PBMs or otherwise forgo the ability to do so. *Issue Ruling Five*, R. 6553, Page ID ## 711221–711226, 711236–711238. Because the latest amendment deadline was in July 2022, this ruling meant each plaintiff was similarly situated with respect to the information needed to add the PBMs as defendants. The court also concluded the PBMs would not suffer prejudice due to the addition of these claims after the deadline. *Issue Ruling Six*, R. 6599, Page ID ## 712265–712274.

The District Court then directed the parties "to apply all six *Issue Rulings* and report to the Court: (1) which of plaintiffs' motions the parties agree should be denied; (2) which motions they agree should be

granted; and (3) which motions require a definitive ruling from the Court because the parties cannot agree." *Id.* at Page ID # 712274 (italics in original). The PBMs did not identify any disputed motion or contend any motion required an additional ruling by the District Court. Instead, they petitioned this Court for mandamus.

## LEGAL STANDARD

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). Accordingly, "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify" such relief. *Id.* at 381.

In making that determination, this Court considers (1) "whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired," as well as (2) "whether the petitioner will be damaged or prejudiced in a way not correctable on appeal after a final judgment." *Life Inv'rs*, 589 F.3d at 323. The Court also assesses whether the district court's order (3) "is clearly erroneous as a matter of law," (4) "contains an oft-repeated error, or manifests a

persistent disregard of the federal rules," or (5) "raises new and important problems, or legal issues of first impression." *Id.*

## <u>REASONS TO DENY THE PETITION</u>

### I. <u>The PBMs' Assertions of Error Lack Merit and Mandamus Is Not the Appropriate Vehicle to Address Any Such Error.</u>

#### A. The District Court's Issuance of Rulings Addressing the PBMs' Substantially Similar Arguments Common to All Plaintiffs Was Proper.

The PBMs assert that by collectively addressing common arguments that bear on all movants seeking to add claims against the PBMs, the District Court defied this Court's admonition to evaluate leave to amend based on "the record in [each] case." *CVS*, 956 F.3d at 845. They are wrong.

While the PBMs speculate that "[t]wo different plaintiffs bringing the same claims at the same time after a deadline may have different explanations for their delay," their primary argument against good cause is "all 800 plaintiffs were on notice of their claims before the applicable amendment deadlines." Pet. 23, 30. Thus, while asserting "there is no necessary or categorical reason to view [plaintiffs'] diligence the same" (*id.* at 23), the PBMs do exactly that—in many instances

repeating the same argument verbatim hundreds of times. *See* Dist. Ct. Resp. 8-9.

Correctly recognizing the significant commonalities among the PBMs' arguments, the District Court addressed them once rather than 800 times. That approach was faithful to the Federal Rules and promoted judicial efficiency. Indeed, as the court observes, "[t]he PBMs' extreme use of rote repetition actually provides the best argument ***in defense*** of [its] use of the *Issue Ruling* process." *Id.* (emphasis and other italics in original). This is especially so because "presumably the very reason the cases were transferred to the MDL court in the first place is that the needs of some cases are the same as those of many others." *CVS*, 956 F.3d at 846.

The District Court also considered, and rejected, the PBMs' assertion that claims filed against them as early as 2018 precluded plaintiffs from demonstrating diligence with respect to claims based on information that did not become "broadly available" until January 2023. *Issue Ruling Six*, R. 6553, Page ID # 711238 n.19. That ruling is sound. The fact that some entities chose to assert claims based on information available to them before January 2023 does not mean plaintiffs,

whether or not represented by the same counsel as the previous filers, lacked diligence for asserting *these claims* based on new information available as of 2023. This is especially so because, as the District Court noted, the PBMs contended those earlier-filed claims lacked a good-faith basis. *See Issue Ruling Six*, R. 6553, Page ID # 711237; *supra* p. 10. The PBMs' broad generalizations as to all plaintiffs based on what a few municipalities previously elected to do is, moreover, hypocritical given their repeated (and incorrect) insistence that the District Court failed to examine the MLAs based on "the record in [each] case." *CVS*, 956 F.3d at 845. Further, the court's determination that the PBMs' productions of the *JeffCo* discovery into the MDL repository contained new information answers their assertion that numerous amending plaintiffs "are represented by PEC members and other attorneys who signed a 2019 MDL bellwether complaint against Express Scripts and OptumRx, among others." Pet. 25.

While the PBMs disagree with the District Court's rulings, they cannot credibly contend the court did not apply Rules 15 and 16 in reaching them. The PBMs thus fall far short of demonstrating manifest legal error.

### B. The District Court Properly Determined It Could Assess the Substance of the Amendments Without Requiring 800 Proposed Complaints.

The District Court likewise did not err in declining to require each plaintiff to submit a proposed amended complaint. Acknowledging that "submission by plaintiff of a proposed amended complaint is the normal procedure," the court correctly observed "Rule 15, as interpreted by the Sixth Circuit, requires only that 'the court must have before it ***the substance*** of the proposed amendment." *Issue Ruling Four*, R. 6428, Page ID # 707424 (emphasis in original) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)); *accord Shillman v. United States*, 221 F.3d 1336 (Table), 2000 WL 923761, at *6 (6th Cir. June 29, 2000) ("the motion itself may be acceptable so long as it puts the opposing party on notice of the content of the amendment").

Through their detailed submissions—which include the initial motion papers, declarations, exhibits, and a 107-page reply brief—plaintiffs "provide[d] defendants and the Court with the substance of the proposed amendments." *Issue Ruling Four*, R. 6428, Page ID # 707424. This is especially true because the PBMs were already named as defendants in bellwether complaints that are "hundreds of pages

long and give[] every defendant a substantial and particularized understanding of plaintiffs' claims and allegations." *Id.*

In *Islamic Center of Nashville v. Tennessee*, by contrast, there was "no indication that [plaintiff] ever filed *a motion to amend or* a proposed amendment with the district court." 872 F.3d 377, 387 (6th Cir. 2017). The plaintiff in *Doe v. Carson* "merely assert[ed] in her motion to amend that the defendants had other statutory duties falling outside disability law," 2020 WL 2611189, at *1 (6th Cir. May 6, 2020), and the plaintiff in *Harris v. Davidson County Sheriff* likewise "failed to clearly present *the nature of his proposed amendments or supplements*," 2019 WL 7573883, at *4 (6th Cir. Dec. 11, 2019). Not so, here.

The fact that "[s]ome moving plaintiffs are municipalities ranging from rural towns with fewer than 1,000 people" and "others . . . are health plans, hospitals, school districts, tribes, and individuals" did not prevent the PBMs from understanding "which of Rochester's claims and allegations each moving plaintiff seeks to press against the PBMs." Pet. 27-28. Indeed, the PBMs' assertion that the MLAs "did not provide notice of each plaintiff's claims" (*id.* at 27) is difficult to fathom in light of their capacious opposition briefs.

Additionally, the process the District Court adopted provides that each amending plaintiff will "file supplemental and amended allegations that will add to, but not supersede or replace, the plaintiff's existing operative pleading." *Issue Ruling Four*, R. 6428, Page ID # 707423. Thus, the forthcoming amended complaints will include the same jurisdiction-specific claims as their predecessors (along with claims from the bellwether Rochester Complaint), to which the PBMs will now be added as defendants.

The District Court, in sum, "f[ound] efficiencies within the Civil Rules, rather than in violation of them." *CVS*, 956 F.3d at 845. There was no error, let alone a manifest one, in the process it employed.

### C. The District Court Did Not Clearly Err in Determining Plaintiffs Demonstrated Diligence Under Rule 16.

"'The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'" *Issue Ruling Five*, R. 6553, Page ID # 711221 (quoting *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021)). "[A]ppellate courts that have applied Rule 16 have afforded wide discretion to district courts' application of that rule."

*Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009). A plaintiff need not "exhaust all avenues to discover information that may serve as the basis of a claim." *O'Neal v. Denn-Ohio, LLC*, 2020 WL 210801, at *2 (N.D. Ohio Jan. 14, 2020). Further, "the time at which certain information became available to" the plaintiff is not "dispositive of diligence," but is rather "a factor to be considered." *NOCO Co. v. Lapidus*, 2022 WL 1803039, at *2 (N.D. Ohio June 2, 2022). The District Court acted well within its discretion in concluding the successful movants were sufficiently diligent in pursuing the present claims against the PBMs.

#### 1. The District Court's determination that plaintiffs obtained meaningful new information regarding the PBMs' misconduct in 2023 was sound.

Good cause exists where material evidence was "not reasonably available" to the movant until after the amendment deadline. *Rapp v. Forest City Techs., Inc.*, 2021 WL 4713394, at *3 (N.D. Ohio June 17, 2021). As detailed in plaintiffs' motion papers, they did not know the facts giving rise to the claims they now seek to bring until late January 2023 at the earliest, when the PBMs produced in the MDL the discovery

materials previously elicited in *JeffCo*. *See supra* pp. 8-12. That was past the amendment deadline for even the last-filed plaintiff.

The PBMs point to cases filed by certain municipalities against the PBMs in 2018 and 2019, as well as "publicly filed letters" in the MDL referencing the PBMs, in addition to a 2019 complaint against certain PBMs that was "signed by counsel who collectively represent nearly half of the 800 moving plaintiffs." Pet. 31. But the fact that some entities determined they had enough information to sue the PBMs at that time does not mean the presently moving plaintiffs were not reasonable in amending after significantly more information became available in 2023.

The fact that much of the information in the *JeffCo* production was contained in documents previously produced by Purdue or other defendants (*see* Pet. 32) is beside the point: as of March 2019, those productions consisted of more than *120 million pages*. Without knowing what they were looking for, plaintiffs could not have identified the relevant information buried in that gargantuan haystack. Good cause, moreover, demands only "reasonabl[e]," not "perfect," diligence. *Reed v.*

*Hope Depot U.S.A., Inc.*, 2017 WL 5202684, at *2 (S.D. Ohio May 15, 2017).

That "the PBMs' business practices, corporate structures, and relationships with other participants in the pharmaceutical supply chain are, by all accounts, unusually opaque" (*Issue Ruling Five*, R. 6553, Page ID # 711238 n.19) further supports plaintiffs' diligence. The PBMs disagree, but the court "is not alone in [its] assessment"; the federal government has made a similar observation. *Id.* (citing *Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug Costs and Squeezing Main Street Pharmacies*, FTC Interim Staff Report at 1 (July 2024)). It was not error for the court to weigh this factor in plaintiffs' favor.

The plaintiff in *Profitt v. Highlands Hospital Corp.*, by contrast, possessed "the information plainly available in" the subject medical records long before the amendment deadline. 2024 WL 3622448, at *4 (6th Cir. Aug. 1, 2024). The PBM-related documents previously included in the millions of pages of materials were not "plainly available" to the MDL plaintiffs—who were viewing discovery with a focus on claims against opioid manufacturers, distributors, and others—

until the PBMs' production of the *JeffCo* discovery into the MDL repository made their importance apparent with respect to claims against the PBMs. There is an equally obvious distinction between the massive amount of discovery in these proceedings and the discrete set of loan modifications at issue in *Bank of America, N.A. v. Corporex Realty & Investment Corp.*, which also (unlike the discovery here) "add[ed] little to" the movant's claims. 661 F. App'x 305, 317 (6th Cir. 2016).

Nor do the present circumstances resemble *Leary v. Daeschner*, where the plaintiffs "gave the district court no excuse for their considerable delay in seeking monetary damages" and "were obviously aware of the basis of the claim for many months, but nonetheless failed to pursue the claim until after it was brought to their attention by [defendant]'s final summary judgment motion." 349 F.3d 888, 907-08 (6th Cir. 2003). So, too, with respect to *Garza v. Lansing School District*, where the conduct the plaintiff claimed to have discovered during a deposition was "actually detailed" in her existing complaint, and pertinent facts were previously disclosed to her in defendants' Rule 26(a)(1) disclosures and elsewhere. 972 F.3d 853, 879 (6th Cir. 2020).

The PBMs' reliance on the First Circuit's *statute-of-limitations* decision under the specific legal standard of a single state (Massachusetts), *City of Boston v. OptumRx, Inc.*, 169 F.4th 58 (1st Cir. 2026), likewise cannot support the extraordinary relief they seek. As the District Court notes, "at least three other federal judges ruled differently than [the district judge in *City of Boston*] and decided the same question in favor of an opioid plaintiff and against the PBMs." Dist. Ct. Resp. 11 (citing cases). The disparity "is largely explained by the applicable standard under Fed. R. Civ. P. 16," which affords trial courts "'***considerable discretion*** in determining what kind of showing' is required." *Id.* at 12 (emphasis in original) (quoting *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019)). This discretion, moreover, is informed by Judge Polster's "knowledge of the entire procedural and evidentiary record surrounding the question of whether MDL plaintiffs were diligent." *Id.*

### 2. The District Court properly considered the PBMs' prior assertions about the dearth of evidence for claims against them.

Further supporting the timing of plaintiffs' amendments, the PBMs called into question the existence of facts bearing on claims

against them well after the date by which they now say these plaintiffs should have sued. In May 2021—more than two years after the March 2019 amendment deadline that applied to many of these cases—OptumRx contended Jefferson County had committed *sanctionable conduct* by asserting claims against it. *See* Conrod Decl., R. 5547-2, Page ID # 640581 (¶ 11). Indeed, even in *2024*, Optum and Express Scripts defendants attacked bellwether plaintiffs' RICO allegations as "frivolous." PBMs' Opp. to Bellwether Pls.' Mot. to Amend, R. 5289, Page ID # 626775. As the District Court aptly summarized, "[t]he PBMs cannot have it both ways." *Issue Ruling Five*, R. 6553, Page ID # 711238.

The PBMs contend the May 2019 letter from OptumRx's counsel only addressed "Missouri state-law claims subject to an additional heightened standard that discovery revealed Jefferson County had no basis to bring." Pet. 35. But the letter nowhere states its assertions are limited to specific claims; it refers to "the allegations in [Jefferson County's] Second Amended Petition," as well as "the causes of action that the County presses against OptumRx." Conrod Decl., R. 5547-2, Page ID ## 640588, 640589. OptumRx broadly stated it was "clear that

the County had no evidentiary basis for suing OptumRx." *Id.* at Page ID # 640588. The District Court did not clearly err in interpreting the document to mean what it says.

The PBMs attempt to deflect by noting (a) not all of them threatened sanctions, (b) OptumRx "did not threaten sanctions against any other plaintiff," (c) no court has imposed sanctions on plaintiffs for bringing claims against the PBMs, and (d) some plaintiffs filed claims against the PBMs beginning in 2018. Pet. 35. But the PBMs mischaracterize the relevance of the sanctions threats to Rule 16's diligence analysis. The point is that if OptumRx believed the evidentiary basis for claims against it was so lacking as to warrant sanctions, the PBMs can hardly fault these plaintiffs for waiting until significant information became available to them beginning in January 2023 before asserting such claims. For this reason, it is likewise irrelevant that the District Court "did not find that any moving plaintiff (let alone all of them) even knew about the non-public Jefferson County letter" or "relied on it in deciding whether to sue the PBMs before the amendment deadline." Pet. 36.

Nor did the District Court make "generalized assertions about a hypothetical plaintiff's decision-making" (*id.*); it simply considered OptumRx's sanctions threat relevant to evaluating "the evidentiary record actually available to [plaintiffs] at the relevant time." *Issue Ruling Five*, R. 6553, Page ID # 711237. That was appropriate.

### D. Even If the District Court Committed Error, It Does Not Amount to a "Judicial Usurpation of Power."

"Traditionally, writs of mandamus were used only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Life Inv'rs*, 589 F.3d at 323. The writ is thus reserved for "judicial usurpation[s] of power." *Id.* The PBMs' complaints about the procedure the District Court adopted to address the MLAs fall far below this imposing threshold.

The PBMs do not dispute that in evaluating the MLAs, the court analyzed good cause under Rule 16 as well as undue delay and prejudice under Rule 15. The District Court thus "articulate[d] and appl[ied] the traditional standards governing such motions." *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011). The PBMs merely assert the court applied those standards *incorrectly*. Even if

that were true, "the most that could be claimed is that the district court erred on a matter within its jurisdiction, which is not a sufficient predicate for mandamus relief." *Life Inv'rs*, 589 F.3d at 326; *cf. John B. v. Goetz*, 531 F.3d 448, 457, 461 (6th Cir. 2008) (granting mandamus where district court "clearly d[id] not take account of federalism and comity considerations" in allowing plaintiffs' expert to make forensic copies of hard drives of computers that "[we]re in the custody of high ranking state officials" and contained information "related to confidential state matters"). The Rule 16 analysis, moreover, entails fact-based determinations that fall comfortably within the District Court's discretion, and "[f]actual errors cannot justify the issuance of the writ." *In re Express Scripts, Inc.*, No. 25-3006, Doc. 24-1 at 2 (6th Cir. June 3, 2025) (alteration in original) (quoting *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 306 n.14 (6th Cir. 1984)).

In *CVS*, which the PBMs cite repeatedly, the motions to amend came *after* the plaintiff counties had "expressly declined . . . to bring any claims against the Pharmacies as 'dispensers' of prescription opioids"; *after* the pharmacies and other "Track One" parties had "engaged in massive discovery, which included more than 600 depositions and the

production of tens of millions of documents"; and *after* the pharmacies had moved for summary judgment on the counties' claims against the pharmacies as opioid distributors and the case was on the brink of trial. 956 F.3d at 841-42. Declining to rule on those motions, the District Court permitted the counties to amend to add their previously disavowed dispensing claims and "ordered discovery to proceed anew as to those claims." *Id.* And when the pharmacies timely moved to dismiss the dispensing claims under Rule 12(b)(6), the court stated its order granting the motion to amend "'was meant to direct defendants not to file *any* non-jurisdictional motions to dismiss.'" *Id.* (emphasis in original).

The District Court's present MLA rulings, on the other hand, expressly contemplate the filing of motions to dismiss by the PBMs, who in the meantime are subject to *no* discovery. And these plaintiffs never disavowed claims against the PBMs before later asserting them. The contrast between *CVS* and this dispute could not be clearer.

## II. <u>**Because the PBMs Could Obtain Adequate Relief Through Normal Procedures, Mandamus Is Inappropriate.**</u>

Because the PBMs had, and will have, multiple opportunities to challenge the District Court's MLA rulings through additional motion

practice or post-judgment appeal, they cannot demonstrate they are "in danger of harm that cannot be adequately corrected on appeal and ha[ve] no other adequate means of relief." *Life Inv'rs*, 589 F.3d at 323. That is reason enough to deny the petition.

### A. The PBMs Elected Not to Pursue Additional Motion Practice Before the District Court.

The PBMs had opportunities to seek relief from the District Court for its purportedly erroneous rulings. The PBMs could have, for example, moved for reconsideration under Federal Rule 59(e) "to correct a mistake of law or fact." *Miller v. William Beaumont Hosp.*, 121 F.4th 556, 557 (6th Cir. 2024). But they did not.

In denying a previous mandamus petition in these proceedings, this Court noted OptumRx "g[a]ve[] no explanation as to why it did not pursue any of the other avenues available to it below before seeking the 'drastic and extraordinary' remedy of mandamus, such as . . . moving for reconsideration[] or moving to certify the question for interlocutory appeal." *In re OptumRx, Inc.*, No. 24-3396, Doc. 7-1 at 2 (6th Cir. Oct. 22, 2024). The PBMs likewise offer no such explanation here. Further, notwithstanding the District Court's invitation, the PBMs did not identify any motions that required further action by the court, including

based on any arguments it purportedly overlooked. *See supra* pp. 15-16. The PBMs cannot now resort to mandamus.

### B. The PBMs Will Have the Right to Seek Future Relief Through Additional Pleading Motions and Post-Judgment Appeals.

In addition to prior opportunities they elected not to pursue, the PBMs will have other means of obtaining relief. Specifically, their "ability to raise challenges to the new complaint[s] by way of a motion to dismiss or on appeal after final judgment further provide[s] adequate alternative means to relief such that [this Court's] immediate intervention here is unwarranted." *In re Futaba Corp. of Am.*, 2024 WL 3490789, at *1 (Fed. Cir. July 22, 2024).

The PBMs' assertion that the District Court determined "many of the newly asserted claims 'would not survive a motion to dismiss'" (Pet. 38 (quoting *Issue Ruling Three*, R. 6418, Page ID # 707377)) is false. The court actually said "defendants have identified *some* claims asserted by *some* plaintiffs that would not survive a motion to dismiss," and it concluded "the defendants have not identified—or otherwise convinced the Court that there exists—any specific case that will not contain a single viable claim against a proposed new defendant." *Issue*

*Ruling Three*, R. 6418, Page ID # 707377. Thus, identifying each futile claim "would not yield denial of any plaintiff's motion to amend in its entirety." *Id.* The District Court further noted "[a]ny such claim . . . can be addressed through a later-filed motion to dismiss." *Id.* Thus, the "procedural rights" this Court determined the District Court had disregarded in *CVS*, 956 F.3d at 845, have been preserved here.

The claims the District Court referred to as futile, moreover, are limited and uncontroversial. While the PBMs protest that "every state supreme court to consider the issue has rejected the state-law public-nuisance theories that plaintiffs seek to press" (Pet. 38-39), only a few have so ruled, and plaintiffs acknowledged they are not pursing claims that are indisputably precluded under certain states' law. *See* MLA Reply, R. 6257, Page ID # 694727 n.5.

Further, while the District Court has issued a moratorium on substantive filings in these non-bellwether cases, that is because each case—including discovery and any other "litigation burdens" (Pet. 39) associated with it—is stayed. If a case "is selected as an MDL bellwether or is remanded" for trial, the PBMs will have an opportunity to move to dismiss. *Issue Ruling Three*, R. 6418, Page ID # 707377 n.3.

The PBMs fail to explain why this procedure relating to "the phasing, timing, and coordination of the cases," for which the District Court's power "is at its peak," *CVS*, 956 F.3d at 845, deprives them of their rights.

Additionally, "mandamus is not intended to substitute for appeal after a final judgment." *Life Inv'rs*, 589 F.3d at 323. As this Court has observed, "allegedly incorrect interlocutory rulings are common on direct appeal in civil cases." *Id.* at 326. The relief the PBMs seek "is clearly available on direct appeal." *Id.*

## III. **There Are No Other Compelling Reasons to Grant Mandamus.**

The PBMs' attempt to turn the District Court's analysis of well-established Rule 15 and 16 factors into a watershed ruling that warrants immediate review is unavailing. They assert that "[b]y granting leave to amend *en masse* to 800 plaintiffs at this late stage of the MDL, the District Court has forced the PBMs to defend against claims by 800 additional plaintiffs." Pet. 38. But the PBMs do not dispute that they can seek to overturn the District Court's determinations through post-judgment appeals. The fact that there are 800 successful movants does not change the analysis.

*CVS* once again offers the PBMs no refuge. There the Court determined the pharmacies would suffer prejudice "in a way not correctable on appeal." 956 F.3d at 845. But that was because the counties had "affirmative[ly] disavow[ed]" dispensing claims against the pharmacies "and discovery as to the claims that the Counties actually did plead was already complete." *Id.* (alterations in original). The District Court's "attempt nonetheless to inject those claims back into the Pharmacies' cases," *id.*, resulted in reopening discovery that posed a significant burden to the pharmacies, who would largely not even be permitted to use the discovery in their trial on distribution claims (*id.* at 842). The pharmacies thus faced the prospect of immediate and substantial hardship, which they would already have sustained by the time of any post-judgment appeal.

By contrast, the PBMs' concern over the prospect of having to "litigat[e] hundreds of new cases" (Pet. 3-4, 9) is obviated by the District Court's moratorium that applies to all of them. Further, unlike the pharmacies in *CVS*, the PBMs are already litigating substantially similar claims asserted by bellwether plaintiffs; the present amendments thus do not expose them to an entirely new theory of

liability. *See In re Nat'l Prescription Opiate Litig. (Meijer)*, 2022 WL 20701236, at *1 (6th Cir. Nov. 10, 2022) (denying mandamus petition where defendant "was added to th[e] case before discovery ever started" and "the only prejudice [defendant] identifie[d] is its litigation costs," which the defendant "ha[d] known it could suffer since it was added to the MDL in 2019").

The PBMs' assertion that plaintiffs seek to "coerce" them into "unwarranted settlements" (Pet. 39) is both baseless and irrelevant. In any event, plaintiffs' motivation is straightforward: consistent with the fundamental principle that cases should rise or fall on their merits rather than technicalities, plaintiffs wish to hold the PBMs accountable for their misconduct that contributed to the devastating opioid epidemic.

Finally, the PBMs fail to articulate "questions of unusual importance" (Pet. 40 (quoting *John B.*, 531 F.3d at 457)) in this dispute over ordinary amendment principles. Their complaints appear directed at the increase of MDLs themselves rather than any purported error by the District Court. *See id.* at 40-41.

Nor do the PBMs' *amici* offer any valid basis for granting the petition. The Buckeye Institute focuses mainly on its qualms with MDLs in general and levies baseless insinuations about these plaintiffs' motivations in filing the MLAs as well as the District Court's objectives in granting them. *E.g.*, Buckeye Inst. Br. 3-4 (gratuitously noting "[t]he possibility that centralized proceedings will facilitate settlement cannot be the primary objective of the transferee court"). Indeed, as the District Court observes, it is *the PBMs' tactics* that, if endorsed, would impair this MDL and encourage inefficiency in future proceedings. Denying these MLAs would leave plaintiffs with no option but to "file new complaints in other courts around the country," which would "surely lead to precisely the results the MDL venue statute, 28 U.S.C. § 1407, was designed to avoid: a flood of subpoenae, uncoordinated discovery deadlines, conflicting party requests, contradictory court rulings, and 'pretrial chaos' in all of these courts." Dist. Ct. Resp. 14 (quoting *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968)).

The U.S. Chamber of Commerce and its co-signers mostly parrot the PBMs' arguments, contending the District Court "operated under

the apparent belief" that it was free "to alter the ordinary constraints, tests, and framework embodied in the Federal Rules and the precedent applying them." Chamber Br., Doc. 36-2 at 8. Their rhetoric ignores the District Court's able analysis of an immense amount of information, which it viewed through the lens of Rules 15 and 16's prerequisites and Sixth Circuit authorities. Additionally, as detailed above, the MLA rulings do not "eliminate the ordinary opportunity to test claims at the pleading stage" or "multiply discovery and motion practice." Chamber Br., Doc. 36-2 at 9. Nor does the Chamber or the PBMs' other *amicus*, Lawyers for Civil Justice (a collection of defense-side organizations and law firms as well as corporations), identify any "Plaintiff-specific facts" (Lawyers for Civ. Justice Br., Doc. 37 at 26) the District Court overlooked. Because the court acted within its discretion in all respects, neither the PBMs nor their *amici* identify any "important problems that often evade appellate review." *CVS*, 956 F.3d at 846.

## **CONCLUSION**

The PBMs do not satisfy any of the factors this Court considers in determining whether to grant the "extraordinary remedy" of

mandamus. *Life Inv'rs*, 589 F.3d at 323. Their petition should be denied.

Dated: September 16, 2026

Respectfully Submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER
270 Munoz Rivera Avenue, Suite 201
San Juan, PR 00918
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains fewer than 7,800 words as counted by Microsoft Word, excluding the items identified in Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of September, 2026, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

Respectfully submitted,

*/s/ Peter H. Weinberger*
Peter H. Weinberger
*Plaintiffs' Liason Counsel*